CALIFORNIA EASTERN LABORATORIES, INC., a California Corporation, Plaintiff–Appellee,

v.

Harry J. GOULD, an individual dba as Meade Laboratories, Defendant–Appellant.

Harry J. GOULD, an individual dba Meade Laboratories, Plaintiff–Appellant,

v.

CALIFORNIA EASTERN LABORATORIES, INC., a California Corporation, et al., Defendants–Appellees.

Nos. 88–15014, 89–15226.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1989.

Decided Feb. 16, 1990.

K.R. Reed, Scottsdale, Ariz., for defendant-appellant.

Mark S. Ostrau and Charles T.C. Compton, Wilson, Sonsini, Goodrich and Rosati, Palo Alto, Cal., for plaintiff-appellee.

Before CHOY, CANBY and NORRIS, Circuit Judges.

CANBY, Circuit Judge:

Harry Gould appeals the decisions in two cases that have been consolidated on appeal. In the first case, the district court held that California Eastern Laboratories (CEL) has a shop right in a patent owned by Gould. In the second, the court dismissed counts in Gould's complaint which charged CEL with violations of the antitrust laws, 15 U.S.C. §§ 1 and 2 and Ariz. Rev.Stat. §§ 44–1402 and 44–1403. Gould also seeks attorneys' fees pursuant to 35 U.S.C. § 285. We affirm the decisions of the lower court in both actions and deny attorneys' fees.

## FACTUAL BACKGROUND

These disputes arose out of a series of contracts entered into by Gould with a number of companies that now are owned in whole or part by CEL. In April 1982, Gould entered into a contract with Neil Smith, who was doing business as Phoenix Microwave, to design a low noise amplifier module (LNA), a device which is useful in Television Receive Only amplifiers (TVRO's). In July 1982, Gould entered into a contract with CEL to do further work and testing to ready the LNA for market. Several days later, on July 21, 1982, CEL purchased all of the business and assets of Phoenix Microwave, including the Gould LNA design.

Two months later, Gould filed an application for a patent covering the improvements he had developed while designing LNA's. The patent, U.S. Patent No. 4,480,-240 (240), issued in October 1984. On July 20, 1984, an application for the second patent in suit, covering additional improvements in LNA's, was filed. The application

bore Gould's name, but was prepared by a CEL subsidiary. That patent, U.S. Patent No. 4,631,494 (494), issued in December 1986.

The cases represented by these appeals began with an action brought by CEL to settle ownership of the two patents at issue. In that case (No. 85–251), the district court ruled on cross-motions for summary judgment that Gould was the proper owner of both patents but that CEL retained a "shop right" in each.

Following the summary judgment order, Gould sought to assert a counterclaim against CEL for violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, seeking treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15. He also sought to assert comparable claims under state law. The district court denied Gould leave to file his counterclaim. Gould subsequently brought the same claims in the form of a new and separate action (No. 87–1162) against CEL and its subsidiary Microwave Systems Engineering, Inc. (MSE). CEL and MSE immediately responded by moving to dismiss Gould's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion with leave to amend. Gould thereafter filed his First Amended Complaint, which CEL and MSE again moved to dismiss. The district court dismissed counts 2 and 3 without leave to amend. After the district court certified that its order was final pursuant to Fed.R.Civ.P. 54(b), Gould filed his appeal.

Gould initially filed an appeal of the partial summary judgment ruling in case No. 85–251 in the Court of Appeals for the Federal Circuit. The Federal Circuit transferred the appeal to this court to consolidate the shop right issue with those issues raised in the appeal of the dismissal of Gould's claims in No. 87–1162.

ANALYSIS

A. *Shop Rights to Patents Nos. 240 and 494*

■ This court reviews a grant of summary judgment *de novo. Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). We can affirm the trial court's finding that CEL has a shop right in Gould's patents only if, viewing the evidence in the light most favorable to Gould, we conclude that there are no genuine issues of material fact. *Id.*

■ The doctrine of shop rights has its origins in equity. A shop right is an employer's nonexclusive right to use an employee's patented process or invention that was developed during the employee's hours of employment. The right is based on the employer's presumed contribution to the invention through materials, time, and equipment. *See U.S. v. Dubilier Condenser Corp.*, 289 U.S. 178, 188–89, 53 S.Ct. 554, 557–58, 77 L.Ed. 1114 (1933).

■ Gould concedes that Phoenix Microwave obtained shop rights to both patents through Gould's work under contract in 1982. Those rights passed to CEL when it purchased the entire business and assets of Phoenix Microwave in July 1982. *See PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1094 (6th Cir.), *cert. denied*, 444 U.S. 930, 100 S.Ct. 272, 62 L.Ed.2d 187 (1979); *Neon Signal Devices v. Alpha–Claude Neon Corp.*, 54 F.2d 793, 796 (D.C.Pa.1931); *Gate-Way, Inc. v. Hillgren et al.*, 82 F.Supp. 546, 555 (S.D.Cal. 1949), *aff'd per curiam*, 181 F.2d 1010 (9th Cir.1950).

Gould presented no evidence in the record to show that CEL did not purchase all of Phoenix Microwave. He argues simply that CEL did not continue the Phoenix Microwave business because it distributed the assets to various existing subsidiaries. This argument attempts to make from the formalities of modern business organization a distinction that is unsuited to the equitable origins of the shop right concept. Gould presents no authority suggesting that the particular form of incorporating the purchased company into the CEL structure is germane.

Unassignable licenses may sometimes be invoked by persons who are not exactly identical with the licensees. A railroad company which was formed by the consolidation of prior railroad companies, may invoke the licenses which were giv-

en to either of its constituent corporations....

*Gate–Way, Inc. v. Hillgren*, 82 F.Supp. at 554–55 (quoting 1 *Walker on Patents*, 437 (6th ed.)).

■ Gould also attempts to invalidate CEL's shop right by arguing that CEL was involved in a fraudulent application for the second patent, No. 494, and thus has "unclean hands." Gould has offered no authority to support his claim that fraud in a later patent application invalidates a pre-existing shop right. The fact that fraud could invalidate the later patent itself is of no assistance to Gould. He owns the patent. To the extent that fraud may vitiate the patents, it would also make shop rights unnecessary. CEL could manufacture at will.

### B. Gould's Antitrust Claim

■ Gould argues that the district court erred in dismissing his antitrust complaint for failure to state a claim under Rule 12(b)(6). We review de novo a district court's dismissal pursuant to Rule 12(b)(6). *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 732 (9th Cir.1987).

■ Gould relies on *Walker Process Equipment Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), to establish his antitrust claim. In *Walker Process* the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Id.* at 174, 86 S.Ct. at 348. Gould's attempt to fit this case into a *Walker Process* action fails. *Walker Process* was an infringement action based on a claim that the defendants had sought to enforce the patent as a means to restrain competition. This case, on the other hand, began as a declaratory judgment action to determine actual ownership of the patent. This is not the kind of anticompetitive enforcement at which the antitrust laws are aimed. Gould has not alleged that CEL actually attempted to enforce the patents. Moreover, since the district court determined that the patents belong to Gould, CEL cannot enforce them. Without some effort at enforcement, the patent cannot serve as the foundation of a monopolization case. Gould has offered no other sufficient basis for his antitrust claim on this appeal. We accordingly conclude that the district court was correct in granting CEL's motion to dismiss Gould's antitrust claims.

Arizona antitrust law is interpreted in accordance with federal law. *See* Ariz. Rev.Stat.Ann. § 44–1412; *Johnson v. Pacific Lighting Land Co.*, 817 F.2d 601, 604 (9th Cir.1987), *cert. denied*, 484 U.S. 1062, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988). Therefore, for the reasons stated above, we also uphold the district court's dismissal of Gould's state claims.

### C. Attorneys' Fees

■ 35 U.S.C. § 285 authorizes the court to award reasonable attorneys' fees in an "exceptional case." Gould has not prevailed on any issue entitling him to fees. Section 285, moreover, applies only to infringement actions. The alleged fraud here is unconnected to any infringement claim. Gould's request for fees is denied.

## CONCLUSION

The judgments of the district court are AFFIRMED.