21 F.3d 568
 1994 Copr.L.Dec. P 27,242, 9
Indiv.Empl.Rts.Cas. (BNA) 532,
30 U.S.P.Q.2d 1365
 AVTEC SYSTEMS, INCORPORATED, Plaintiff-Appellant,
v.
Jeffrey G. PEIFFER; Kisak-Kisak, Incorporated; Paul F.
Kisak, Defendants-Appellees.
AVTEC SYSTEMS, INCORPORATED, Plaintiff-Appellee,
v.
Jeffrey G. PEIFFER; Kisak-Kisak, Incorporated, Defendants-Appellants,
and
Paul F. Kisak, Defendant.
 Nos. 92-2521, 92-2607.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1993.
Decided April 6, 1994.
 
 ARGUED: John P. Corrado, Michael Lee Zupan, Hazel & Thomas, Alexandria, VA, for appellant. Douglas James Cole, Taylor, Newsome, Tinkham, Lefevere & Cole, Fairfax, VA, for appellees. ON BRIEF: William S. Taylor, Tommye Jolly-Tinkham, Taylor, Newsome, Tinkham, Lefevere & Cole, Fairfax, VA, for appellees.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and GEORGE ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 Affirmed in part, vacated in part and remanded by published opinion. Judge PHILLIPS wrote the opinion, in which Chief Judge ERVIN and District Judge GEORGE ROSS ANDERSON, Jr., joined.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 In these consolidated appeals, we consider a number of copyright and state-law claims arising from the parties' failure to memorialize their intentions regarding ownership of a computer program. We affirm in part, vacate in part, and remand for further proceedings.
 
 
 2
 * The facts, as described by the district court, Avtec Systems, Inc. v. Peiffer, 805 F.Supp. 1312, 1315-17 (E.D.Va.1992), are as follows. Avtec Systems, Inc. (Avtec) markets space-related computer services and products to the federal government. Its services include computerized simulations of satellite orbital patterns. Jeffrey G. Peiffer began working part-time for Avtec while in college and became the company's fifth full-time employee upon his graduation in 1984. During his career with Avtec, his job description included "implement[ing] computer simulation" and, specifically, simulating "satellite orbits." J.A. 232-33.
 
 
 3
 In 1984, Avtec purchased a Macintosh computer at Peiffer's suggestion. After Peiffer demonstrated the computer's abilities to Avtec President Ronald Hirsch and other employees, it became apparent that the company's orbital simulations would be enhanced in several respects by using a Macintosh. It is disputed whether that idea originated with Peiffer alone or in discussions with other Avtec personnel; it also is disputed whether Avtec authorized Peiffer to begin developing a computer program for that purpose ("the Program") as he did in 1985. Peiffer demonstrated the Program--called "the .309 version"--to Hirsch and others at Avtec that same year, and again during his 1988 performance appraisal as evidence of his initiative on the job.
 
 
 4
 At that point, Hirsch and another Avtec employee suggested several modifications to enhance the Program's utility as a marketing tool for the company. Peiffer charged time to an Avtec account for making those enhancements. Peiffer also received a $5,000 bonus in early 1989 for helping to land a contract by demonstrating the Program as a unique Avtec service. He performed similar demonstrations for other clients as well. Later that year, Avtec issued a written policy, of which Peiffer was aware, binding employees to duties of confidentiality and nondisclosure respecting the company's proprietary information and trade secrets.
 
 
 5
 In early 1990, another Avtec employee found some bugs in the Program. After Peiffer fixed them, that other employee presented the corrected version to a client. In 1991, Avtec labeled the Program as a trademark and advertised it as unique to Avtec. J.A. 331. At no time before his eventual departure from Avtec did Peiffer represent to his employer or to its potential clients that he had an ownership interest in the Program.
 
 
 6
 In 1992, however, when Peiffer was asked to demonstrate the Program to NASA as part of a contract bid, he used the old, uncorrected .309 version without informing anyone at Avtec or NASA of that fact. Peiffer concedes that Avtec did not win that contract in part because he showed the outdated version. Shortly there after, when Peiffer was again asked to demonstrate the program, he refused and said that he didn't have a copy of it at the office.
 
 
 7
 Unbeknownst to Avtec, Peiffer had met Paul F. Kisak early in 1989 and granted Kisak's company, Kisak-Kisak, Inc. (KKI) an exclusive license to market the Program. Sales generated $197,000 in gross revenues for KKI, of which Peiffer received approximately half.
 
 
 8
 Avtec registered for a copyright in the .309 version of the Program on March 27, 1992. Six days later, Avtec commenced this action against Peiffer, Kisak, and KKI (collectively, "defendants") charging copyright infringement, misappropriation of trade secrets, and breach of fiduciary duty.[1] Avtec also sought imposition of a constructive trust. On April 9, Peiffer registered his copyright claim in the .309 version, which he called MacOrbit, and another copyright claim in the 2.05 version, which he called the Orbit Program and identified as derivative of the .309 version. J.A. 1924-25. Defendants then counterclaimed for copyright infringement.
 
 
 9
 After a three-day bench trial, the court found that Peiffer owned copyright in the later version of the Program, reasoning that he had not created it within the scope of his employment as is required by 17 U.S.C.A. Sec. 201(b) (West 1977 & Supp.1993) in order for copyright to vest in an employer. Avtec, 805 F.Supp. at 1317-19. On that basis, the court denied Avtec relief on Count I and--pursuant to defendants' counterclaim--ordered Avtec to withdraw its registration of copyright.[2] Id. at 1319, 1323.
 
 
 10
 Avtec prevailed on its state-law claims, however. The court held that, through its contributions to and use of the .309 version, Avtec had a trade secret in the use of that version as a demonstration and marketing device similar to "shop rights" that may arise in an employee's patented invention. The court also found that Peiffer and KKI had misappropriated that trade secret.[3] Id. at 1320-21. Upon finding additionally that Peiffer breached fiduciary duties owed to Avtec, the court imposed a constructive trust. The terms required Peiffer and KKI: (1) to grant Avtec a perpetual license (as long as defendants had a copyright interest) to use the Program "for the same purposes as a purchaser might lawfully utilize it"; (2) to pay Avtec 15% of gross revenues received from the Program in perpetuity from March 1, 1989; and (3) to give Avtec all current and forthcoming versions, enhancements, and upgrades of the Program before making them commercially available. Id. at 1322-23.
 
 
 11
 Avtec's appeal and the defendants' cross-appeal from unfavorable portions of the judgment followed and were consolidated for hearing and disposition in this court.
 
 
 12
 We discuss in order the issue of copyright ownership as it bears upon the conflicting claims of copyright infringement in Avtec's principal claim and the defendants' counterclaim, the disposition of Avtec's pendent state law claims for misappropriation of trade secrets and breach of fiduciary duty, and the imposition of a constructive trust in favor of Avtec.
 
 
 13
 To recover on its copyright claim, Avtec had to show that it owned a valid copyright in the Program and that defendants encroached upon one of the exclusive rights it conferred. 17 U.S.C. Sec. 501(a); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660 (4th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993). Those rights include the control of reproduction, distribution, and performance or display of the original, as well as the production of derivative works.[4] 17 U.S.C. Sec. 106.
 
 
 14
 These rights presumptively vest in the author--the one who translates an original idea into a fixed, tangible means of expression.[5] Id. Sec. 102(a). The presumption of authorial ownership falls, however, if the work is made "for hire," such as one "prepared by an employee within the scope of his or her employment." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737-38, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989) (quoting 17 U.S.C. Secs. 101(1), 201(b)). Under those circumstances, copyright vests in the employer for whom the work was prepared. Id. at 737, 109 S.Ct. at 2171. This exception is overridden only by a clear writing reserving authorship rights to the employee, 17 U.S.C. Sec. 201(b), which concededly did not exist in this case.
 
 
 15
 It is essentially undisputed that Peiffer was Avtec's employee at the time of the Program's inception. The contested issue throughout has been whether Peiffer created the Program within the scope of his employment. Reid instructs that common-law agency principles govern resolution of that question. 490 U.S. at 739-40, 109 S.Ct. at 2172-73 (citing Restatement (Second) of Agency Sec. 228 (1958)). As expressed in Section 228 of the Restatement, the key principle is that a servant's conduct is within the scope of employment "only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master."
 
 
 16
 We agree with the district court that creation of the Program was "of the kind" of work Peiffer was employed to perform. See 805 F.Supp. at 1318. When that element of the Restatement test is met, courts have tended not to grant employees authorship rights solely on the basis that the work was done at home on off-hours. See Miller v. CP Chems., Inc., 808 F.Supp. 1238, 1242-44 (D.S.C.1992) (computer program prepared at home during off-hours, without direction or extra compensation from employer held work-for-hire), appeal dismissed, No. 93-1045 (4th Cir. April 13, 1993); Marshall v. Miles Lab., Inc., 647 F.Supp. 1326, 1330 (N.D.Ind.1986) (same, regarding article written for publication in scientific journal); In re Simplified Info. Sys., Inc., 89 B.R. 538, 542 (W.D.Pa.1988) (same, regarding computer software).
 
 
 17
 On the other hand, copyright does not vest in the employer solely because "the subject matter of the work ... bears upon or arises out of the employee's activities for his employer." Melville B. Nimmer, 1 Nimmer on Copyright Sec. 5.03[B][b][i] at 5-28 (1993) ("Nimmer "). Thus, Avtec had to show that Peiffer was at least "appreciabl[y]" motivated by a desire to further its corporate goals in order to satisfy the third element of the work-for-hire test. Restatement (Second) of Agency Sec. 236 cmt. b; id. Sec. 235 (act falls beyond scope of employment if "done with no intention" to serve master) (emphasis added).
 
 
 18
 The district court found that Peiffer had not developed version 2.05 of the Program "within Avtec authorized time and space limits ... [and] was [not] motivated, at least in part, by a purpose to serve Avtec." 805 F.Supp. at 1318-19. On this basis, the court held that copyright vested in Peiffer, not in Avtec, and accordingly rendered judgment in favor of defendants on Avtec's claim and on their counterclaim.
 
 
 19
 Avtec contends that the district court should have applied the scope-of-employment test more flexibly in light of its finding on the pendent state-law claims that Peiffer breached duties that he owed to Avtec as its employee.[6] See id. at 1316-17. Defendants rightly question whether the outcome of pendent state-law claims may drive the analysis of the federal claim upon which jurisdiction is based. But we conclude that the court did err, however, by injecting into the analysis of copyright ownership an element contemplated neither by the Restatement's scope-of-employment test nor by the law of copyright generally--i.e., the court's preliminary finding that the .309 version of the Program differed materially from the 2.05 version in terms of the use to which it was put in the marketplace.
 
 
 20
 To reiterate, copyright protects not original ideas but their incarnation in a tangible means of expression. See generally Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). It appears undisputed that the original expression at issue here is embodied in the source code for the .309 version of the Program.[7] The commercial use to which that work is put does not alter the owner's exclusive rights to copy it and to prepare derivative works based upon it.[8] Cf. Mazer v. Stein, 347 U.S. 201, 218, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954) (exclusive rights undiminished regardless of the "intended ... or [actual] use in industry" to which the work is put); Rogers v. Koons, 751 F.Supp. 474, 477 (S.D.N.Y.1990), aff'd, 960 F.2d 301 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).
 
 
 21
 Instead of focusing upon the question whether the .309 version was created within the scope of Peiffer's employment, however, the district court made a preliminary finding that Avtec used the original version solely as "a demonstration and marketing device," while the later 2.05 version was a " 'stand-alone' software package that could be marketed commercially," which Avtec neither could nor would have developed.[9] 805 F.Supp. at 1316. Relying on this utilitarian distinction between two versions of the program, the court expressly confined its decision on the question of copyright ownership to "the current 2.05 version" of the Program. Id. at 1318-19. Finding dispositive the facts that Peiffer worked on the Program at home, on his own equipment and time, as a "personal hobby, and not to satisfy specific work obligations for Avtec," the court reasoned that "while Peiffer allowed earlier versions of the Orbit Program to be used by Avtec for various client demonstrations, Avtec did not ... persuade the Court that Peiffer's development of the 2.05 version ... was actuated by his desire to serve Avtec" and held that Avtec could not "claim complete or joint ownership of the 2.05 version." Id. at 1319 (emphases added).
 
 
 22
 Defendants urge us to extend this express language to encompass the .309 version as well, arguing that such a finding is implicit in the court's order that Avtec withdraw its registration of copyright in that version. We do not believe the implication is possible; several factors weaken it. The first, of course, is the court's deliberately exclusive focus upon the 2.05 version in its express references to Peiffer's copyright ownership. The court did describe him as "the .309 version's creator," Id. at 1320, but that passing reference occurs in its discussion of Avtec's trade secret claim--in which consideration of Peiffer's copyright interest is, as we discuss below, notably absent, and in which the court found that Avtec had a significant interest in the "use" of the .309 version. Moreover, the court held that "Peiffer owns the version of the Orbit Program for which he made copyright application," id. at 1323, when he had in fact applied for copyright in both versions.
 
 
 23
 These factors call into question both the court's assessment of the evidence before it and its application of the law to the facts of the case. Anticipating our de novo review of the legal component of the scope-of-employment issue, the parties emphasize conflicting evidence supporting their respective positions on that issue. Avtec points to evidence that it authorized Peiffer to work on the project at home during off-hours and contends that Peiffer's resulting behavior compels the inference that he intended the work, at least in part, to contribute to Avtec's successful pursuit of its business objectives.[10] Defendants counter with the evidence relied upon by the district court that Peiffer developed the Program as a hobby and that Avtec failed to exercise significant control or supervision over the project.[11]
 
 
 24
 As indicated, we have concluded that the district court's resolution of the scope-of-employment issue was flawed by a misapprehension of the controlling legal principles. We are not in a position to resolve that heavily fact-laden issue in the first instance; among other reasons, credibility could be decisive. Though we regret the necessity, we must instead vacate those portions of the judgment respecting the claim and counterclaim for copyright infringement and remand those claims for reconsideration, in light of this opinion, of the dispositive common issue whether the original Program was created within the scope of Peiffer's employment. If upon that reconsideration the court again concludes that it was not so created, the court should of course again give judgment in favor of defendants on Avtec's copyright claim, and must of course then also reconsider the effect of such a finding upon defendants' counterclaim for copyright infringement.[12] Should the court conclude instead that Peiffer created the .309 version within the scope of his employment with Avtec, it must then determine whether defendants infringed the copyright (for example, by preparing unauthorized derivative works[13]); whether Kisak and KKI are liable for such infringement; and any statutory remedies that may be warranted by wrongful copying of protected material.[14] 17 U.S.C. Secs. 502-505.
 
 II
 
 25
 On their cross-appeal from the judgment against them on Avtec's claim for misappropriation of trade secrets, the defendants raise two major issues. Apparently for the first time on appeal, they contend that the trade secrets claim is preempted by the federal provision of a cause of action for copyright infringement. See generally Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). Because Avtec did not treat the issue as waived, and because we find it necessary to vacate the judgment and remand for reconsideration of the trade secrets claim, we note that the defense must fail under this circuit's recent decision in Trandes Corp., 996 F.2d at 660.
 
 
 26
 The Trandes court considered whether the Copyright Act preempted an action brought under Maryland's trade secrets statute which, like the Virginia law at issue here, closely tracks the Uniform Trade Secrets Act. Compare Md.Com.Law II Code Ann. Sec. 11-1201(e) (1990 & Supp.1993) with Va.Code Ann. Sec. 59.1-336 (Michie 1992) and UTSA (reprinted in 2 R. Milgrim, Trade Secrets app. A (1991)). We rejected the preemption defense on the basis that recovery for trade secret misappropriation requires proof of breach of confidence--an element of proof additional to those necessary for recovery in an action for copyright infringement. Trandes, 996 F.2d at 659-60; H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132 (1978) reprinted in 1976 U.S.C.C.A.N 5659, 5748 (anticipating no preemption of actions to enforce "[t]he evolving common law rights of ... trade secrets ... as long as the cause[ ] of action contain[s] elements, such as ... a breach of trust or confidentiality, that are different in kind from copyright infringement."). The same result follows here.
 
 
 27
 Defendants argue alternatively that the trade secrets claim fails on the merits. In Virginia, a trade secret is information such as "a formula, pattern, compilation, program, device, method, technique, or process" that has independent economic value due to its secrecy and that is subject to reasonable attempts to keep it secret. Va.Code Ann. Sec. 59.1-336. Misappropriation is the improper acquisition or disclosure of a trade secret by one who "knew or had reason to know" that acquisition occurred "under circumstances giving rise to a duty" to maintain confidentiality. Id. Thus, the hallmark of a trade secret is not its novelty but its secrecy. Dionne v. Southeast Foam Converting, 240 Va. 297, 397 S.E.2d 110, 113 (1990).
 
 
 28
 The court found that Avtec had an interest--described variously as a "trade secret," a "license," and a "right" akin to the equitable "shop rights" of patent law--in the "use of the .309 version ... as a demonstration and marketing device." 805 F.Supp. at 1320. There is no difficulty in finding the existence of a trade secret in the source or object codes to computer programs where question of copyright ownership is not in issue, Trandes, 996 F.2d at 662, or, even more clearly, where the owner of the alleged trade secret also owns copyright in the material sought to be protected.[15] E.g., Computer Assocs. Int'l., Inc., 982 F.2d at 715-16, 720. Of course, a plaintiff "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive." Id. at 720.
 
 
 29
 But defendants rightly question a judgment that, in effect, imposes liability upon a copyright owner for "misappropriating" his own work.[16] As discussed above, the court made no express finding that Peiffer owns copyright in the .309 version of the Program, and that question has been remanded for resolution by the district court. Expressing no opinion upon it, we do note a critical consequence of a ruling upon it in Peiffer's favor in regard to Avtec's trade secret claim. It would mean that from the moment of the Program's inception, Peiffer has owned the exclusive right to license performances of the original and of any derivative works. And as discussed above, absent a written agreement regarding Avtec's use of the Program, any use license held by Avtec would be implied and therefore nonexclusive. See n. 12, supra. Avtec offers no authority, and we have found none, for the proposition that the alleged "owner" of a trade secret, Dionne v. Southeast Foam Converting & Packaging, Inc., 240 Va. 297, 397 S.E.2d 110, 113 (1990), could maintain the secrecy of material that is subject under federal law to publication at the will of another. We do not believe that a nonexclusive use license in copyrighted material can support the reasonable expectation or right of secrecy necessary to predicate a claim that the identical material is a trade secret protectible under Virginia law.[17] See Restatement (First) of Torts Sec. 757 cmt. b (1939) (trade secret must have "a substantial element of secrecy ... so that, except by the use of improper means, there would be difficulty in acquiring the information"; one factor in determining trade secrecy is the ease or difficulty with which the information could be properly acquired by others) (emphasis added).
 
 
 30
 For the above reasons, we must vacate the portion of the judgment in favor of Avtec on its trade-secret claim, and remand it for reconsideration in light of this opinion.III
 
 
 31
 Peiffer argues that the district court erred as a matter of law in concluding that he bore any fiduciary duties toward Avtec and that he breached those duties. We have considered his arguments, and reject them. "A fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." H-B Ltd. Partnership v. Wimmer, 220 Va. 176, 257 S.E.2d 770, 773 (1979). Employees owe their employers the duty to "be candid ... and [to] withhold no information which would be useful to the employer in the protection and pursuit of its interests." Community Counselling Serv., Inc. v. Reilly, 317 F.2d 239, 244 (4th Cir.1963). The district court rightly found that Peiffer breached those duties through his nondisclosure of his business relationship with Avtec's competitor KKI and by demonstrating the outdated version of the Program to Avtec's detriment and without its knowledge.
 
 IV
 
 32
 In view of our disposition of the various claims, the remedial portion of the district court's judgment, including the constructive trust it imposed, must be vacated, with appropriate remedy to abide results on remand. If the court were to conclude that Avtec does hold copyright in the .309 version and all derivatives, any infringement of its exclusive rights may be remedied as provided under the statute. 17 U.S.C. Secs. 502-505. Specifically, Avtec would be entitled to all revenues generated through the infringement, and not merely a percentage of profits as was awarded under the constructive trust, and Avtec need only show, as it has, defendants' gross profits from the Program. Id. Sec. 504(b). If Avtec were to prevail on the reconsidered trade secret claim, the court should award such damages, not coextensive with any awarded for copyright infringement as could be shown. Computer Assocs. Int'l., Inc., 982 F.2d at 720.
 
 
 33
 Conversely, if the court finds against Avtec on the issue of copyright ownership, its damages would be limited to those flowing from the breach of fiduciary duty whose finding by the district court we have affirmed, while the defendants' recovery on their counterclaim would be limited to such statutory damages as they could prove entitlement to.
 
 V
 
 34
 To summarize. We vacate those portions of the judgment which pertain to Avtec's claim and the defendants' counterclaim for copyright infringement, and remand for further proceedings consistent with this opinion. We vacate that portion of the judgment finding defendants liable to Avtec on the latter's claim for misappropriation of trade secrets, and remand that claim for further proceedings consistent with this opinion. We affirm that portion of the judgment determining that Peiffer breached fiduciary duties owed to Avtec. We vacate the entire remedial portion of the judgment to abide the determination of liability on the various claims upon remand.
 
 
 35
 SO ORDERED.
 
 
 
 [1]
 A claim for misappropriation of business opportunity was later withdrawn
 
 
 [2]
 The court found that defendants-counterclaimants failed to prove damages from the "alleged" violation of Peiffer's copyright, and denied all parties costs and fees. 805 F.Supp. at 1323
 
 
 [3]
 Kisak had by then been dismissed as a defendant from all but the copyright infringement claim
 
 
 [4]
 A "derivative work" is a work based upon one or more preexisting works, such as a translation ... or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."
 To "perform" a work means to recite [or] render ... it, either directly or by means of any device or process....
 17 U.S.C. Sec. 101.
 
 
 [5]
 The protected material in this case consists of the Program's source and object codes. Human beings write source codes, but computers can't read them until they are mechanically translated by compiling programs into object codes, which tell computers how to process data. Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 698 (2d Cir.1992). The parties have not raised, and we do not address, the issue of the potentially separate copyrightability of any screen displays arising from the Program's operation. See id. at 703
 
 
 [6]
 Because Avtec does not raise the issue, we do not address the court's rejection of the alternative contention that Avtec's copyright in the Program arose from its joint authorship of the work with Peiffer. See 805 F.Supp. at 1319
 
 
 [7]
 Thus, we reject as meritless defendants' contention that Avtec seeks copyright on ideas, not expression. See Appellee Br. 27-28
 
 
 [8]
 Certain types of noncommercial use may, of course, provide a "fair use" defense to a claim of copyright infringement, 17 U.S.C. Sec. 107, but there is no contention that the defense is applicable in this case
 We also note, for clarity's sake, a matter addressed by neither party: Publication of works prior to March 1, 1989 without notice of copyright ownership risks forfeiture of the Copyright Act's protections. 17 U.S.C. Secs. 401, 405; Michael D. Scott, Scott on Computer Law Sec. 3.37 (1991). Publication occurs upon "the distribution of copies ... by sale or other transfer of ownership" and by "offering to distribute copies ... for purposes of further distribution, public performance, or public display." 17 U.S.C. Sec. 101. "A public performance or display of a work does not of itself constitute publication," however, id., and it is generally agreed that "publication does not include the distribution of copies under an obligation of confidence." Scott Sec. 3.37 at 3-134.
 
 
 [9]
 The court's analysis illustrates the tension between copyright law's competing policies of rewarding individual initiative and creativity versus promoting broad public access to original works, Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156, 95 S.Ct. 2040, 2044, 45 L.Ed.2d 84 (1975), and implies an intention to resolve that conflict, at least with respect to computer programs having a relatively short market life, in favor of broad access. See Matthew R. Harris, Note, Copyright, Computer Software, and Work Made for Hire, 89 Mich.L.Rev. 661 (1990)
 To the extent that any functional difference between the versions resulted from revisions of the original, the matter properly is addressed through derivative-works analysis undertaken after resolution of the copyright-ownership issue. See generally Stewart v. Abend, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990).
 
 
 [10]
 It is uncontested that Peiffer invoked the .309 version to show his initiative at Avtec; that he made changes suggested by Avtec managers; that he demonstrated the Program at their request; that he was rewarded for doing so with a sizeable cash bonus; that he modified the Program at the suggestion and with the aid of other Avtec employees, billing the time to a specified Avtec account on at least one occasion; and that he failed at any relevant time to allege any proprietary interest in the Program. See 805 F.Supp. at 1315-16
 
 
 [11]
 The district court rightly questioned the extent to which an employer's control over a work remains a dispositive factor in "work for hire" analysis following the Supreme Court's qualified rejection of such analyses in Reid, 490 U.S. at 738-39, 109 S.Ct. at 2171-72. See 805 F.Supp. at 1318
 
 
 [12]
 As to that possibility, we offer these observations for such guidance as they may provide the court upon any reconsideration of the counterclaim. While, as the district court properly found, assuming Peiffer owned copyright, any infringement that occurred caused defendants no actual damage, Appellee Br. 47, defendants rightly contend that 17 U.S.C. Sec. 504(c) mandates consideration of statutory damages in lieu of actual damages, with modifications for instances of "innocent infringement." On this issue, we note that the court found implied in Peiffer's conduct a grant to Avtec of a limited use license in the Program. 805 F.Supp. at 1320. Expressing no view on the factual basis for that holding, which is not now in issue, we further note that such an implied license is necessarily nonexclusive and revocable absent consideration. See MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778-79 (3d Cir.1991); 3 Nimmer Sec. 10.02[B]. Thus, while an implied license may fail to vest a proprietary interest in the licensee that is enforceable against other licensees, it may provide a defense--properly pled by Avtec, J.A. 85--to the counterclaim. See MacLean Assoc., 952 F.2d at 779
 
 
 [13]
 Peiffer and KKI concede that "all versions of the Orbit Program" are "to some extent" derivative of the original .309 version, Appellee Br. 29. See Stewart, 495 U.S. at 223-24, 234-36, 110 S.Ct. at 1761-62, 1767-68
 
 
 [14]
 The parties concede that it is within the district court's discretion to award or deny attorneys' fees as part of the costs of the action. 17 U.S.C. Sec. 505
 
 
 [15]
 Although Avtec alleged in its complaint that defendants misappropriated its trade secrets in "the Program," in its client lists, and in its marketing techniques, J.A. 22-23, on appeal it focuses argument exclusively on the alleged trade secret in the Program, Appellant Reply Br. 21-26, and we confine our decision accordingly
 
 
 [16]
 With respect to whether copyright ownership may provide a defense to a claim for misappropriation of trade secrets, the defense cannot be overcome by invoking patent-law "shop rights." Congress expressly declined to incorporate such rights into copyright law. See 1 Nimmer Sec. 5.03[C] (citing H.Rep. No. 1476, supra, at 121, reprinted in 1976 U.S.C.C.A.N. at 5736-37)
 
 
 [17]
 We reject defendants' argument that, even if Avtec had a trade secret, secrecy was lost when the company demonstrated the Program to clients. Trandes, 996 F.2d at 663-64. We do not address the alternative contention that Avtec failed to take reasonable steps to protect the secrecy of the source code because we anticipate reconsideration of the evidence on remand, noting only a tension between the district court's finding that Avtec did take such precautions, 805 F.Supp. at 1320, and the court's prior observation that "[t]he evidence is far from convincing that Avtec ever continuously possessed the software." Id. at 1319