67 F.3d 293
 1995 Copr.L.Dec. P 27,432
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AVTEC SYSTEMS, INCORPORATED, Plaintiff-Appellant,
v.
Jeffrey G. PEIFFER; Kisak-Kisak, Incorporated; Paul F.
Kisak, Defendants-Appellees.
 No. 94-2364.
 United States Court of Appeals, Fourth Circuit.
 Argued July 10, 1995.
Decided Sept. 13, 1995.
 
 ARGUED: John P. Corrado, HAZEL & THOMAS, P.C., Alexandria, VA, for appellant. Douglas James Cole, TAYLOR, NEWSOME, TINKHAM & COLE, Fairfax, VA, for appellees. ON BRIEF: Michael L. Zupan, HAZEL & THOMAS, P.C., Alexandria, VA, for appellant. William S. Taylor, TAYLOR, NEWSOME, TINKHAM & COLE, Fairfax, VA, for appellees.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 This case comes to us on a second appeal after we vacated portions of an earlier judgment and remanded the case to the district court for reconsideration of certain issues. In the present appeal, Avtec Systems, Inc. ("Avtec") challenges the district court's ruling on remand that its former employee, Jeffrey Peiffer, is the owner of the copyright to a particular computer program and that Avtec is not the owner of the program under the work-for-hire doctrine of copyright law. Avtec also challenges the district court's ruling that Peiffer did not misappropriate trade secrets and its refusal to award damages for Peiffer's breach of fiduciary duty. Finding no error, we affirm.
 
 
 2
 * Avtec markets space-related computer services and products, primarily to the federal government. From May 1984 until April 1992, Peiffer was a full-time employee of Avtec. His work involved using computer programs to solve problems and produce simulations related to satellite orbital analysis.
 
 
 3
 In 1985, Peiffer began developing a computer software program that performs various orbital simulations for satellites (the "Program"); the original version is called the .309 version. He developed the Program at home, on his own computer equipment, on his own initiative, and without the knowledge or direction of Avtec. He spent approximately 36 man months (or 6240 hours), time for which he was not compensated by Avtec, developing the source code for the Program.[1] Peiffer kept the source code at home, bringing only executable copies of it to work on a few occasions, and never shared the source code with anyone at Avtec until 1992.
 
 
 4
 Peiffer demonstrated the .309 version of the Program to Avtec's president in 1988. He incorporated several modifications suggested by the president and another Avtec employee into the Program to prepare it for demonstration as a marketing tool for Avtec, charging 83 hours to an Avtec account for making those enhancements. He made these changes only for the purpose of demonstration and did not permanently incorporate them into the Program. His demonstration of the Program as a unique Avtec service to a potential client helped Avtec win a contract, and he received a $5,000 bonus in early 1989 for his contribution.
 
 
 5
 Peiffer demonstrated the Program to two other potential Avtec clients in 1989. In February 1990, another Avtec employee identified several errors in the Program, which Peiffer fixed. That employee then demonstrated the updated version to yet another potential client. Then, in 1992, Peiffer was asked to demonstrate the Program to NASA as part of a contract bid; he demonstrated the old, uncorrected .309 version. Peiffer concedes that Avtec did not win the NASA contract in part because he showed the outdated version. Finally, shortly thereafter, Peiffer refused to demonstrate the Program to one last potential client, claiming that he did not have a copy of it in his office.
 
 
 6
 Peiffer's supervisor at Avtec told him that Avtec was not interested in the Program and arranged for him to meet Paul Kisak early in 1989 to market the Program. J.A. 3347-52. Peiffer granted Kisak's company, Kisak-Kisak, Inc. ("KKI") an exclusive license to market the Program. After meeting with Kisak, Peiffer began to develop the Program from a tool for demonstrations and particularized problemsolving into a stand-alone software package that could be marketed commercially. The version of the Program currently marketed by KKI is known as the 2.05 version. As of the time of trial, sales had already generated $197,000 in gross revenues for KKI, of which Peiffer received approximately half.
 
 
 7
 On March 27, 1992, Avtec registered for a copyright in the .309 version of the Program. On April 2, 1992, it filed a complaint against Peiffer, Kisak, and KKI, charging copyright infringement, misappropriation of trade secrets, and breach of fiduciary duty. Avtec also sought to impose a constructive trust. On April 9, 1992, Peiffer registered for copyrights in the .309 version and in the 2.05 version, identifying the latter as a derivative of the .309 version. On April 29, 1992, he, along with Kisak and KKI, filed a counterclaim against Avtec for copyright infringement, seeking damages, injunctive relief, and a declaratory judgment naming Peiffer as the sole owner of the copyright in the Program.
 
 
 8
 After a bench trial, the district court found that Peiffer owned the copyright in the later 2.05 version of the Program because he had not created it within the scope of his employment as is required in order for copyright to vest in an employer. The court therefore denied Avtec relief on its infringement claim and ordered it to withdraw its registration of copyright pursuant to the defendants' counterclaim. The court held in Avtec's favor on its state law claims, however, holding that Avtec had a trade secret in the use of the .309 version as a demonstration tool, that Peiffer and KKI had misappropriated that trade secret, and that Peiffer had breached fiduciary duties owed to Avtec. It imposed a constructive trust requiring Peiffer and KKI (1) to grant Avtec a perpetual license to use the Program, (2) to pay Avtec 15% of gross revenues received from the Program from March 1, 1989, into perpetuity, and (3) to give Avtec all current and forthcoming versions of the Program before making them commercially available. Avtec Systems, Inc. v. Peiffer, 805 F.Supp. 1312 (E.D.Va.1992).
 
 
 9
 Avtec appealed and the defendants cross-appealed from unfavorable portions of the judgment. We vacated in part and affirmed in part. Avtec Systems, Inc. v. Peiffer, 21 F.3d 568 (4th Cir.1994) (hereinafter "Avtec I "). We affirmed the portion of the district court's judgment regarding Peiffer's liability for breach of fiduciary duty, but vacated the portions of the judgment pertaining to Avtec's claim and the defendants' counterclaim for copyright infringement. We held that, in applying the scope-of-employment test to the copyright claims, the district court erroneously focused on the authorship of the 2.05 version and the fact that that later version differed from the earlier .309 version in terms of use to which it was put in the marketplace. We remanded those claims for "reconsideration ... of the dispositive common issue whether the original [.309 version of the] Program was created within the scope of Peiffer's employment" and, if so, whether the defendants infringed the copyright by creating and selling unauthorized derivative works. 21 F.3d at 574. We also vacated the portion of the judgment finding Peiffer and KKI liable for misappropriation of trade secrets, holding that, if the district court held on remand that Peiffer owned the copyright in the .309 version of the Program, it could not also hold that Peiffer "misappropriated" it. Finally, we vacated the remedial portion of the judgment to be redetermined on remand in conformity with the determination of liability on the various claims.
 
 
 10
 On remand, no new evidence was presented. The district court found that Peiffer did not create the .309 version of the Program in the scope of his employment with Avtec and thus Avtec did not own the copyright in it or in any derivative works by virtue of the work-for-hire doctrine. Avtec Systems, Inc. v. Peiffer, No. 92-463-A, 1994 WL 791188 (E.D.Va. Sep. 12, 1994). Accordingly, the district court held "that Peiffer owned the copyright to the 2.05 [version] and all prior programs from which it was derived," including the .309 version, and that Avtec owned only a license to use the Program revocable at Peiffer's will. Slip op. 17. The district court then held that, because Peiffer owned the copyright to all versions of the Program, there was no basis for Avtec's misappropriation of trade secrets claim.
 
 
 11
 In the remedial portion of its judgment, the district court ordered that Avtec withdraw its copyright application for any version of the Program. It ruled that Peiffer and KKI had proved no damages resulting from any copyright infringement by Avtec and accordingly awarded them none. It also held that, although Peiffer had breached fiduciary duties owed to Avtec, Avtec had proved no resulting damages, and it awarded none. Finally, it declined to award attorney's fees and costs to either party. Avtec now appeals, challenging the district court's application of the work-for-hire doctrine as well as its refusal to award Avtec damages for Peiffer's breach of fiduciary duty and its ruling against Avtec on its trade secret claim.
 
 II
 Copyright Claim
 
 12
 To recover on its claim of copyright infringement, Avtec had to show that it owned a valid copyright in the .309 version of the Program and that the defendants violated one or more of the exclusive rights conferred by the copyright. 17 U.S.C. Sec. 501(a); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660 (4th Cir.), cert. denied, 114 S.Ct. 443 (1993). Copyright ownership of a work is presumed to vest in its author--"the person who translates an idea into a fixed, tangible expression"--unless that person's employer can establish, the burden being on the employer,[2] that it is a "work made for hire." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989). If a work is one made for hire, the employer for whom it was prepared is considered the author and is presumed to own the copyright. Id. (construing 17 U.S.C. Sec. 201(b) (West 1977)). The work-for-hire exception is overridden only by a clear writing, signed by the parties, that reserves authorship rights to the employee. 17 U.S.C. Sec. 201(b). No such writing existed here.
 
 
 13
 The employer can show that a work is made for hire by establishing that it was (1) created by an employee (2) acting within the scope of the employment relationship. 17 U.S.C.A. Sec. 101 (West Supp.1995). Peiffer was indisputably a full-time employee of Avtec from 1984 to 1992, during which time he created the .309 version of the Program. The parties, however, dispute whether he created that version of the Program within the scope of his employment with Avtec.
 
 
 14
 The copyright statute does not itself define "scope of employment," but it is established that Congress intended to incorporate common law agency principles into the copyright statute. Reid, 490 U.S. at 740 (citing Restatement (Second) of Agency Sec. 228 (1958)). Consequently, to show that the creation of the .309 version of the Program was within the scope of Peiffer's employment, Avtec had to show that (1) the work was of the type for which Peiffer was hired to perform; (2) Peiffer's creation of the Program occurred "substantially within the authorized time and space limits" of his job; and (3) was "actuated, at least in part, by a purpose to serve" Avtec's interests. Avtec I, 21 F.3d at 571 (quoting Restatement (Second) of Agency Sec. 228).
 
 
 15
 The first element is indisputably satisfied. The district court originally found that the creation of the Program was work of the type for which Peiffer was hired; we affirmed that finding in Avtec I, 21 F.3d at 571; and the district court reiterated the finding on remand. The parties, however, dispute whether the second and third elements of the Restatement test for scope of employment were met. On remand, the district court found that Avtec did not make a sufficient showing of either element, and we now hold that those findings were not clearly erroneous. The factual issues as to both elements were close; the resolution of each was dependent to some degree on credibility determinations; we cannot say that the district court's findings were not "plausible accounts of the evidence." See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 16
 * The district court found that the second element was not satisfied--that Peiffer created the .309 version of the Program beyond the authorized time and space limits of his employment--relying upon the facts that Peiffer created it at home, on his own equipment, without compensation, with no permanent contribution from anyone at Avtec, and that he, "except when requested to demonstrate it, maintained possession of the Program at his home." Slip op. 11-12. This finding is not clearly erroneous.
 
 
 17
 Avtec contends that the district court erred on remand by ignoring the instructions of this Court and established law, both of which acknowledge that, when the work performed is of the type for which the employee is hired to do, it is of little consequence that the work was actually performed at the employee's home rather than at the employer's place of business. Avtec may have confused the import of our instructions. In Avtec I, we explained that, when the first element is met--that the work is of the kind the employee is hired to perform--"courts have tended not to grant employees authorship rights solely on the basis that the work was done at home on off-hours." 21 F.3d at 571 (emphasis added). This was not to say that the first element is dispositive of the work-for-hire determination. As we explained, "copyright does not vest in the employer solely because 'the subject matter of the work ... bears upon or arises out of the employee's activities for his employer.' " Id. at 572 (emphasis added). Instead all elements must be considered. Here, the second element is met: Peiffer created the original version of the Program at home, on his own computer, on his own initiative, without direction, authorization, or compensation from Avtec. He was not salaried, and the Program was not directly related to any specific task he was performing during duty hours. The fact that he later received a minuscule amount of compensation and direction from Avtec when temporarily refining the Program for a demonstration is irrelevant; copyright ownership is determined at the moment that the work is created, or fixed into a tangible means of expression, 17 U.S.C. Secs. 101, 201(a), and there is no question that Peiffer created the Program outside the time and space constraints of his employment.
 
 B
 
 18
 The district court also found that the third element of the Restatement test was not met--that Peiffer was not sufficiently motivated by a purpose to serve Avtec's interests. Avtec contends that the district court erred on remand by ignoring our instruction that an employee need only be motivated appreciably by a purpose to serve the employer and by instead applying a standard of substantial motivation. We disagree.
 
 
 19
 An act "may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person." Restatement (Second) of Agency Sec. 236. An act falls within the scope of employment if the employee "was at least 'appreciably' motivated by a desire to further" the employer's corporate goals, and it falls beyond the scope of employment "if 'done with no intention' to serve" the master. Avtec I, 21 F.3d at 572 (quoting Restatement (Second) of Agency Secs. 235, 236 cmt. b). Black's Law Dictionary specifically defines "appreciable" as meaning "[p]erceptible but not a synonym of substantial." The foregoing rules do not mean, however, that even the most minute scintilla of motivation is sufficient to satisfy the Restatement test; otherwise an employer's allegation regarding the element would be practically impossible for an employee ever to refute.
 
 
 20
 The district court did rule, ambiguously on the face of the matter, that no "view of the evidence supports the proposition that there was no intention to create the program as incident to Peiffer's employment with Avtec. This question defies such an absolute answer and must turn on the extent to which Peiffer was so motivated." Slip op. 14. The district court went on to conclude, however, that Peiffer was not motivated to serve Avtec's interests sufficiently to satisfy the test. Again, we hold that this finding was not clearly erroneous.
 
 
 21
 Any evidence that Peiffer might have been motivated to serve Avtec's interests relates to incidents that occurred after the initial fixing of the Program, at a time when copyright ownership was already set, including Peiffer's few demonstrations of the Program to potential Avtec clients and Peiffer's temporary modification of the Program at Avtec's request. Mere use of the Program by Avtec after fixation cannot convert it from Peiffer's property to Avtec's. In contrast, at the time of fixation, Peiffer was not being compensated for the Program by either a salary, hourly wages, or a bonus; the Program was not related to any particular project that Peiffer was charged with performing for Avtec; he was not working on a way to improve the efficiency of his job or Avtec's business; and he was not receiving any direction from Avtec. Moreover, there is a memo in the record in which an Avtec executive wrote in 1989 "forget this" in reference to the Program, implying that Avtec did not find the Program useful or consider it worthy of proprietary treatment. J.A. 311. In sum, the district court's holding that Peiffer was not actuated to any appreciable extent to serve Avtec's interests at the time of fixation is not clearly erroneous.
 
 III
 Trade Secret Claim
 
 22
 Avtec also challenges the district court's ruling that Peiffer and KKI were not liable for misappropriation of trade secrets. As we held in Avtec I, one cannot be guilty of misappropriating his own property; so long as Peiffer is the owner of the copyright in the original version of the Program and in its derivatives, including the 2.05 version, he cannot be guilty of misappropriating them. 21 F.3d at 575. Based on our holding that Peiffer is indeed the owner of the copyright in the Program, we therefore affirm.
 
 IV
 Breach of Fiduciary Duty Damages
 
 23
 Finally, Avtec contends that, after finding that Peiffer breached fiduciary duties owed to Avtec (a finding that we affirmed and the district court reinstated on remand), the district court erred in failing to award damages on that claim. We disagree.
 
 
 24
 Initially, the district court imposed a constructive trust based on both the trade secret misappropriation it found and on the breach of fiduciary duty. In Avtec I, we vacated that remedy, to be reconsidered in light of our instructions on the merits. 21 F.3d at 576 ("if the court finds against Avtec on the issue of copyright ownership, its damages would be limited to those flowing from the breach of fiduciary duty whose finding by the district court we have affirmed"). On remand, the district court held that "Avtec has not proven what damages, if any, it suffered by reason of Peiffer's breach of fiduciary duty." Slip op. 19. Although it acknowledged that Avtec might have been damaged by Peiffer's demonstration of an outdated version of the Program to NASA, his refusal to perform a demonstration for a potential client, and his failure to disclose his association with Avtec's competitor KKI, the district court held that "it is doubtful that a party in Avtec's position could prove that any one or combination of these instances of breach of fiduciary duty led to ... contracts not being awarded to it." Id.
 
 
 25
 We agree. The constructive trust is no longer an appropriate remedy. First, it is unclear that, had Peiffer not breached fiduciary duties, Avtec would have marketed the Program and earned the same revenues for itself that Peiffer and KKI earned. Moreover, there is credible evidence that Peiffer was not dealing secretly with Avtec's competitor--that Peiffer's supervisor at Avtec told Peiffer that Avtec was not interested in the Program and even introduced Peiffer to Kisak, giving his implicit permission that Peiffer should associate with Kisak and KKI to market the Program. Finally, we defer to the district court's determination of the credibility of the testimony regarding the potential worth of the unawarded contracts and the likelihood they would have been awarded absent Peiffer's breach. We therefore affirm the district court's decision not to award damage as not clearly erroneous. Scott v. Vandiver, 476 F.2d 238, 243 (4th Cir.1973) ("Ascertainment of damages ... involves questions that are essentially factual, and an award by a district judge will not be upset unless it is clearly erroneous.").
 
 V
 Attorneys' Fees and Costs
 
 26
 Finally, the defendants request that they be awarded attorneys' fees and costs under 17 U.S.C. Sec. 505. However, they did not formally appeal from the district court's order denying such an award. We nevertheless note that the district court's order did not constitute an abuse of discretion and is well supported by its finding that neither side substantially prevailed in any phase of the litigation. Avtec lost on its claim of copyright infringement while the defendants successfully secured the declaratory judgment they sought concerning Peiffer's ownership of the copyright. However, the defendants did not establish their entitlement to any damages due to infringement of Peiffer's copyright by Avtec. Moreover, Avtec did have persuasive arguments on the issue of copyright ownership. Absent an abuse of discretion, we affirm the district court's decision that each side should therefore bear its own costs and fees.
 
 AFFIRMED
 
 
 [1]
 The source code is the human readable/editable version of a program which, when translated into the binary language of computers by a "compiling program," tells a computer how to run the program
 
 
 [2]
 Avtec's contention that the district court erroneously presumed that Peiffer owned the copyright and required Avtec to overcome that presumption is unavailing. It was not incorrect for the district court to hold that Peiffer presumptively owned the Program, so long as it proceeded to consider whether Avtec overcame that presumption by showing that Peiffer created the Program as a work-for-hire, within the scope of his employment